**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SEKLE WISSEH,<br><br>*Plaintiff,*<br><br>v.<br><br>PROGRESSIVE DIRECT INSURANCE COMPANY,<br><br>*Defendant.* | CIVIL ACTION<br>NO. 26-00134 |

**Pappert, J.** **October 21, 2026**

**MEMORANDUM**

Sekle Wisseh was involved in a car accident, which he promptly reported to his automobile insurance carrier, Progressive Direct Insurance Company. After a nine-month investigation, and before Progressive made a decision on his claim, Wisseh sued Progressive in the Philadelphia County Court of Common Pleas. Progressive removed the case to federal court. Wisseh's Second Amended Complaint alleges in Count I a breach of contract claim while Count II asserts a claim for statutory bad faith. Progressive moves for summary judgment on the bad faith claim. The Court grants the motion and enters judgment for Progressive on Count II. The record evidence shows Progressive thoroughly investigated legitimate issues of coverage while Wisseh, contrary to his insurance policy's requirements, failed to cooperate in that investigation.

I

Wisseh applied for Progressive's Massachusetts Motor Vehicle Insurance Policy for his Cadillac Escalade on December 31, 2024, representing that he lived at "Hanscom

AFB, MA 01731" and that the "Principal garaging address" for the Escalade was that 01731 zip code. (Appl. for Mass. Motor Vehicle Insurance at 1, Dkt. No. 51-1.) Progressive approved Wisseh's application, and the Policy became effective on January 7, 2025. (Policy at 2, Dkt. No. 51-2.) Under the Policy, Progressive may refuse to pay claims if Wisseh gives "false, deceptive, misleading or incomplete information" including "the description and the place of garaging of the vehicle(s) to be insured[.]" (*Id.* at 35–36.) The Policy requires Wisseh, after an accident or loss, to cooperate with Progressive in its investigation of any claim, including submitting to an examination under oath at a place designated by the insurer. (*Id.* at 40–41.) Wisseh's failure to cooperate permits Progressive to deny the claim. (*Id.* at 41.)

On March 15, 2025, Wisseh was involved in an accident in Philadelphia while driving his Cadillac. (Progressive's Claim Notes at 3, 8, Dkt. No. 51-4.) He reported the claim to Progressive the next day, including that he was repairing his car in Fredericksburg, Virginia. (*Id.* at 1–2.) On March 18, a Progressive claim representative, JoJo Williams, interviewed Wisseh over the phone. He told her he was in Virginia and planning to get medical treatment soon. (*Id.* at 4.) On March 20, Progressive opened a formal Personal Injury Protection (PIP) claim. (*Id.* at 6.)

Amanda Hunt, another claim representative, proceeded to investigate the Cadillac's garaging location. (*Id.* at 7.) Her review of Wisseh's insurance history and the Accurint database revealed that he was associated with both residential and mailing addresses in Woodbridge, Virginia, from as early as 2022. (*Id.* at 8–9.) During an April 3 phone call, Wisseh told Hunt that he was receiving medical treatment in Virginia. (*Id.* at 12.) Hunt asked him for more information about his treatment, but

Wisseh refused to provide anything until treatment was complete. (*Id.*) On April 11, Hunt sent Wisseh a letter requesting copies of his PIP claim application, treatment and medical insurance information, HIPAA medical authorization and wage authorization. (April 11, 2025 Letter, Wisseh Compl. "Exhibit C" at 10–12, Dkt. No. 19.) Wisseh did not respond.

On July 29, Wisseh called Hunt and asked about Progressive's reimbursement of his medical bills. (Progressive's Claim Notes at 16.) Hunt again told Wisseh that Progressive needed his medical records, but he did not provide them until October 29. (*Id.* at 16–19.) The records Progressive eventually received showed that Wisseh received all of his medical treatment Virginia and Maryland. (*Id.* at 19.) This led the claim representatives to question Wisseh's Massachusetts residence. (*Id.*) On October 29, another claim representative asked Wisseh to confirm his address. (Text Messages at 1, Dkt. No. 51-7.) Wisseh replied that he was "in the process of moving to Virginia" and provided the same Virginia mailing address with which he had been associated since 2022. (*Id.*; Progressive's Claim Notes at 8.) His claim application, moreover, listed "2515 Basin View Lane, Woodbridge, Virginia 22191" as his home address, (*Id.* at 8, 21), which Progressive claims representatives later confirmed with a LexisNexis Advanced People Search. (LexisNexis Advanced People Search Results at 1, Dkt. No. 51-5.)

Based on their investigation to that point, the claims representatives suspected that Wisseh misrepresented his Cadillac's garaging location and on November 7 transferred the claim to Progressive's Coverage Verification Team. (Progressive Claim Notes at 20.) That day, a Progressive representative called Wisseh and explained that

before the company could consider paying his medical costs, it needed specific information to verify his residency in Massachusetts at the time of the Policy's January, 2025 inception. (*Id.* at 22.) Wisseh responded by threatening legal action. (*Id.* at 22–23.)

Progressive did not deny Wisseh's claim, choosing instead to schedule an examination under oath pursuant to the Policy. (*Id.* at 23; Policy at 41, 36.) On November 17, counsel for Progressive instructed Wisseh to appear for his examination on December 2, and requested he bring documents that could establish his Massachusetts residency at the time of his insurance application. (November 17, 2025, Letter at 1, Dkt. No. 51-8.) The letter explained that "to complete its comprehensive investigation" it needed Wisseh's testimony, reminding him that the Policy required his cooperation. (*Id.*) The letter specifically requested, among other things, that Wisseh bring social media posts, pay stubs, cell phone bills, proof of employment and information about other insurance policies. (*Id.* at 2–3.) It added that his failure to participate would be construed by Progressive as evidence that Wisseh was not cooperating according to the Policy's terms. (*Id.* at 1.)

Wisseh failed to appear for his examination under oath. Again, rather than deny his claim, Progressive kept trying, sending a second letter with a rescheduled examination date. (December 2, 2025, Letter at 1, Dkt. No. 51-9.) Rather than cooperate, Wisseh filed suit.

II

Federal Rule of Civil Procedure 56 directs a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This language compels summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A plaintiff may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

III

Pennsylvania's bad faith statute provides for interest, costs, attorneys' fees and punitive damages if the court finds that "the insurer has acted in bad faith toward the insured." 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West). Courts have defined bad faith as "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). There is a two-part test for bad faith claims: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). Both elements must be proven by clear and convincing evidence. *O'Donnell ex rel.*

*Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. 1999). Even at the summary judgment stage, "the insured's burden in opposing a summary judgment motion brought by the insurer is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citation omitted).

Wisseh sued Progressive before the insurer made a decision as to whether or not to pay anything on his claim, so he contends the company acted in bad faith during its investigation. (Pl's. Resp. at 9; Dkt. No. 54.) The duty of good faith "includes the duty to investigate a claim fairly and objectively." *Emp'rs Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 495 (W.D. Pa. 2007) (citation omitted). But an insurer does not act in bad faith by thoroughly investigating legitimate issues of coverage. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 368 (3d Cir. 2004) (citation omitted); *see also Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F.Supp. 353, 360–61 (E.D. Pa. 1997) (finding an insurer did not act in bad faith by investigating an insured's misrepresentation on an insurance application).

The record evidence shows Progressive thoroughly investigated legitimate coverage issues. The possibility that Wisseh misrepresented where he lived and garaged his car was a legitimate coverage issue that Progressive had every right to investigate. A vehicle's garaging location directly impacts a car's risk of damage and thus an insurer's calculation of premiums and issuance of policies. (Def's Brief in Supp. at 2, Dkt. No. 52); *see also J.C. Penney Life Ins. Co.*, 393 F.3d at 368; *see also Jung*, 949 F.Supp. at 360–61 (holding that an insurer "had a reasonable basis to investigate and

deny coverage based upon its belief that the [insured] had made a material misrepresentation").

Wisseh stated that he lived and garaged his car in Massachusetts, but the evidence available to Progressive after the March 15 accident undermined that representation. (Appl. for Mass. Motor Vehicle Insurance at 1.) On March 18, three days after his accident, Wisseh told claim representative JoJo Williams that he was repairing his car and was in Virginia. (Progressive's Claim Notes at 1–2.) On April 3, he told another claim representative that he was receiving medical treatment in Virginia. (*Id.* at 8–9, 19.) Claim representatives thus began investigating a garaging issue in April, and discovered Wisseh's association with mailing and residential addresses in Virginia from before he applied for the Policy. (*Id.* at 8–9.) After Wisseh provided his medical information on October 29, claim representatives told him the insurer needed to verify that he was a resident of Massachusetts at the time of the Policy's January 2025 inception before Progressive could begin to repay his medical bills. (*Id.* at 22.) Rather than cooperate with their investigation, as he was required to do under the Policy, Wisseh threatened suit. (*Id.* at 22–23; Policy at 41.)

Nothing suggests that Progressive acted in bad faith during the investigation, especially because the "aggressive protection of an insurer's interests is not bad faith." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012). Wisseh's non-cooperation could have allowed Progressive to deny his claim, but the company instead requested an examination under oath to get to the bottom of things. Wisseh contends that the requests in the letter scheduling the examination were excessive and intrusive, but he had obligations under the Policy to cooperate with Progressive and provide

records so it could "complete its comprehensive investigation" of his coverage. Even after Wisseh failed to show or provide any of the requested materials, Progressive gave Wisseh another chance, scheduling a second examination.

Progressive had a reasonable basis for its investigation into where Wisseh lived and where the car was garaged when it issued the Policy. The insurer repeatedly requested relevant information to which it was entitled, such as medical records and information which could resolve these legitimate coverage issues. Wisseh either refused to cooperate or delayed his cooperation for several months, then sued Progressive rather than submit to an examination under oath as he was required to do under the Policy.

Based on this record, no reasonable jury could find, particularly by clear and convincing evidence, that Progressive acted in bad faith when investigating Wisseh's claim.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.